IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>NICHOLAS ANDREW TRAVIS,<br><br>Defendant. | 8:20CR80<br><br>GOVERNMENT'S BRIEF IN RESPONSE TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE |

The United States of America, by and through Assistant United States Attorney Sean P. Lynch respectfully submits this response in opposition to Defendant, Nicolas Andrew Travis's (hereinafter "Travis"), Motion for Compassionate Release. (Filings 63 and 66). The Government respectfully requests Travis's motion be denied on the grounds that he has failed to establish that he exhausted his administrative process as required by 18 U.S.C. § 3582(c)(1)(A); Travis fails to show he qualifies for a sentence reduction; and Travis poses a danger to the community if released.

**PROCEDURAL BACKGROUND**

On February 19, 2020, Travis was indicted for Receipt and Possession of Child Pornography. Filing 1. On June 25, 2020, Travis pled guilty to Count I of the Indictment pursuant to a plea agreement. Filing 27. On April 26, 2021, Travis was sentenced to 151 months' imprisonment to be followed by a 5-year term of supervised release. Filing 60. On March 10 and 24, 2023, Travis filed Motions for compassionate release. Filings 63 and 66. On March 24, 2023, the Court directed the United States to respond to Travis's motions on administrative exhaustion and the merits.

**ARGUMENT**

"'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 825 (2010). As the Supreme Court has recognized, finality is an

important attribute of criminal judgments, and one "essential to the operation of our criminal justice system." *Teague v. Lane*, 489 U.S. 288, 309 (1989) (plurality opinion). Accordingly, it is well established that once a district court has pronounced sentence and the sentence becomes final, the court has no inherent authority to reconsider or alter that sentence. Rather, it may do so only pursuant to statutory authorization. *See, e.g.*, *United States v. Addonizio*, 442 U.S. 178, 189 & n.16 (1979); *United States v. Washington*, 549 F.3d 905, 917 (3d Cir. 2008); *United States v. Smartt*, 129 F.3d 539, 540 (10th Cir. 1997) ("A district court does not have inherent authority to modify a previously imposed sentence; it may do so only pursuant to statutory authorization.") (internal quotation marks omitted).

Title 18 U.S.C. Section 3582(c)(1)(A), as modified by the First Step Act, allows the Director of the BOP or an inmate to move the court for the reduction of an inmate's prison sentence. A sentence reduction pursuant § 3582(c)(1)(A) is also referred to as "compassionate release." *See* Pub. L. No. 115-391, § 603(b). Section 3582(c)(1)(A) provides in pertinent part:

> **(c) Modification of an imposed term of imprisonment**.--The court may not modify a term of imprisonment once it has been imposed except that—
>
> **(1)** in any case—
>
> **(A)** the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
> **(i)** extraordinary and compelling reasons warrant such a reduction; or
>
> **(ii)** the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger

> to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). According to the statute, an inmate may petition the court for a reduction of sentence under § 3582(c)(1)(A) only after certain procedural requirements are met. Specifically, when all administrative remedies have been exhausted or after a lapse of 30 days from requesting such relief from the warden of the BOP facility in which the defendant is held.

When an inmate's request is denied by the Warden, the inmate may appeal the denial through the Administrative Remedy Procedure in 28 CFR 542(B). *See* Federal Bureau of Prisons Program Statement 5050.50, *Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g)*, § 571.63 Denial of Request, available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf. An inmate has not exhausted their administrative remedies until they receive a denial from either General Counsel or the Director of the Bureau of Prisons. *Id.*

The inmate bears the burden of proving both that he has satisfied these procedural requirements for judicial review—*i.e.* that he has "exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on [his] behalf" or that 30 days have lapsed "from the receipt of such a request by the warden"—and that "extraordinary and compelling reasons" exist to support the motion. § 3582(c)(1)(A); *see United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue."); *cf. United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) ("[A] defendant, as the § 3582(c)(2) movant, bears the burden of establishing that retroactive amendment has actually lowered the guidelines range in his case.").

*ADMINISTRATIVE EXHAUSTION*

Travis has not established that he has satisfied the procedural requirements for judicial review. Travis asserts that he submitted his request for compassionate release in "December, 2022," but does not allege the day of the month it was submitted. *See* Filing 66 at p. 3. Travis does not include any documentation to support his assertion that he did in fact petition the warden. Travis also acknowledges that his motion is incomplete. Filing 66 at p. 13. Moreso, Travis's motions are largely referencing incidents that happened after his alleged request to the warden of FCI Terre Haute. Specifically, he alleges that "Councilor Williams informed B-(unreadable) in SHU on or about February 8th, 2023, of my criminal charges to which they were previously unaware" which he claims then caused him to be called names. Filing 63 at p. 1. Travis stated that he included a proposed release plan, additional housing/work information, and additional information: extraordinary reasons to Filing 66 (*see* Filing 66 at p. 6), however no such documentation is included. *See generally* Filing 66.[1]

For all of the above reasons, Travis has not procedurally met the bar to even be considered for relief.

[1] After the Court directed the Government to respond, Travis sent a letter to the Clerk of the District Court. Filing 68. In this letter, Travis discusses a possible release plan in which he asks the Court to civilly commit him. While not included in Travis's motions nor being directed to address this filing, the Government would note that Travis does not appear to be making this request pursuant to 18 U.S.C. § 4241 *et seq.*, but rather as a contemplated condition of supervised release. Travis's provided medical records do reveal multiple mental health diagnoses with the described treatment being medication which Travis has refused to take. *See infra.* Travis is asking for a civil commitment to "an inpatient community based mental Health Institution where I can get the Therapy and help I need to maintain consistent stability prior to being fully/officially granted release." Filing 68 at p. 3. Travis offers no recommendation from a psychologist or a psychiatrist substantiating what type of therapy he needs or whether the proposed institutions are suitable. Travis's stated goal with this proposed treatment is to "learn better habits, get passed [sic] old traumas, forego my criminal mindset, and learn better skills to function in society." Filing 68 at p. 4. While his goal is laudable, Travis never addresses how this treatment would address his mental health diagnoses, his health diagnoses that he claims are going untreated, his refusal to take medications, or mitigate against the danger he poses to the community. This release plan is undeveloped and, thus, cannot support granting the relief that Travis seeks.

*SUBSTANTIVE GROUNDS*

Even if the Court were to consider Travis's motion on substantive grounds, he would not be entitled to relief.

As a preliminary matter, Travis's complaints may soon be resolved mooting his motion. Travis has described "the basis for the compassionate release is due to Abuses by BOP Staff on a wide scale." Filing 68 at p. 3. A large part of Travis's motion (Filing 63) revolves around his treatment by a Bureau of Prison's employee at FCI Terre Haute that he identifies as "S. Williams." However, Travis notes "I will be transferred soon, so I may not be here by the time you get this." Filing 66 at p. 14; *See also* Filing 68 at p. 2. Travis largely complains about a particular BOP employee, who he identifies as Councilor Williams. *See generally* Filing 63. It is notable that Travis alleges that Councilor Williams told Travis to "come back to I-Unit," which implies that Travis is no longer in direct contact with the corrections officer about whom he is complaining. Filing 63 at p. 1. As noted previously, the events alleged by Travis against Councilor Williams are alleged to have happened after his alleged petition to the warden so they could not have been considered by the warden. Beyond that, personality conflicts with a BOP employee are not grounds for the relief he seeks.

Travis's other complaints are also largely self-induced. Travis states "I'm 6'7" Tall broad-shouldered, and appox. 208 lbs. at last check; when I lay on my back, you can see my sturnem [sic] ribs, hip bones, and what's left of my stomach sinks in to my abdomen by at least a third of a foot without me holding my breath/sucking in my gut; I am borderline emaciated." Filing 63 at p. 4. A review of Travis's provided medical records indicates multiple stints of hunger strikes. *See* Filing 66-1 at p. 34, 50-51,106. Travis also admits to selling his food. Filing 63 at p. 3. To grant compassionate release in such a circumstance would create a perverse incentive for other inmates

to refuse to eat in an attempt to gain similar relief. Travis refusing to eat against medical advice is not a substantial or compelling reason for release.

Travis claims that he is not receiving medication for his medical ailments. A review of the provided medical documentation reveals that this is both not true and, again, often self-imposed. Travis was prescribed medication beyond the trazadone he references in Filing 66 at pages 10 and 14 for the medical conditions that he claims are going unaddressed. *See* Filing 66-1 at p. 3, 22, 31, 44, 74. It also notable that Travis not receiving additional medication is self-induced: "TRAVIS reports Seroquel is not effective and he has stopped taking it." Filing 66-1 at 2; "Patient offered nsaids but patient refused them all stating they don't do anything for his back pain." Filing 66-1 at p. 28; "Inmate refused Meds/Paxil. '…not the med that I wanted….'" Filing 66-1 at p. 66; "Inmate has refused/no-show for pill line med on at least 3 consecutive occasions." Filing 66-1 at p. 76. There is no indication, other than Travis's own unqualified opinion that his medical needs are not being adequately met. From the documentation included in Filing 66-1 it appears that Travis is receiving a significant amount of medical treatment for his conditions and he is receiving medication for those conditions. Travis presents "insufficient evidence of his own medical condition or that it cannot be adequately treated in BOP custody to establish that 'extraordinary and compelling reasons warrant such a reduction.'" *United States v. Barraza*, No. 8:4CR447, 2023 WL2186937, at 1 (D. Neb. Feb. 23, 2023). Like refusing to eat, granting relief when an inmate is refusing to take prescribed medications would also create a perverse incentive for inmates to seek relief by acting in a similar manner. Travis's motion for compassionate release should be denied.

Travis also claims that he is having to sleep on the top bunk when he is bottom bunk restricted and has often chosen to sleep on the floor as a result. *See* Filing 63 at p. 5. As an initial matter, Travis offers nothing to substantiate his claim that he is bottom bunk restricted nor anything to support his claim that he is in fact sleeping on the floor or the top bunk. The medical records

that Travis does submit reflect that he suffers from scoliosis, but there is no mention of that restricting him to a bottom bunk. There is also no substantiation as Travis's cellmate also having bottom bunk restriction and that their medical conditions, if true, would be in conflict. From Travis's motion, it appears that he is still able to care for himself even with this condition. This Court has previously denied motion for compassionate release for a defendant with scoliosis, who appeared to be suffering from the condition more than Travis, stating:

> Further, that Defendant is able to walk with a cane or walker suggests a reasonable likelihood that he is able to care from himself. There is also no indication in the record that BOP is in any way failing to meet Defendant's needs with regard to his medical and physical condition. Defendant's bald assertion that he has some medical or physical conditions is insufficient to constitute extraordinary and compelling reasons justifying a sentence reduction or his release.

*United States v. Beridon*, No. 8:20CR236, 2022 WL 2452571, at 1 (D. Neb. July 6, 2022). Travis's situation is less severe and, thus, requires the same conclusion; his motion for compassionate release should be denied.

*DANGEROUSNESS*

Without exhausting the administrative process and not demonstrating an extraordinary and compelling reason, the Court need not determine at this juncture whether Travis is a danger to the safety of another person or to the community. If the Court were to reach this point in its analysis, Travis, a convicted sex offender, is a danger. The facts of Travis's underlying conviction are as follows:

> That on or about January 24, 2020, special agents with Homeland Security Investigation executed a search warrant at Defendant's apartment at the Open Door Mission in Omaha, Nebraska. During that search warrant, the special agents seized Defendant's cell phone. On January 24, 2020, Defendant was interviewed and admitted to the special agents that he had used his cell phone to download child pornography from the Internet while at his apartment in Omaha, Nebraska. As one method to receive child pornography, Defendant admitted that he had paid an unknown individual $130 for access to a Mega.nz account to download child pornography. Mega.nz is a file sharing service based in New Zealand.

> A forensic examination of Defendant's cell phone was conducted and 3,127 images and videos depicting children, specifically girls between the ages of 3 to 10, engaging in sexually explicit conduct were found on Defendant's cell phone.

Filing 32. Travis clearly has a sexual interest in children and, thus, poses a danger to individuals, particularly children, and the community.

*CONCLUSION*

For the foregoing reasons, Travis's motions for compassionate release should be denied.

UNITED STATES OF AMERICA, Plaintiff

STEVEN A. RUSSELL
United States Attorney
District of Nebraska

By: s/ Sean P. Lynch
SEAN P. LYNCH, #25275
Assistant U.S. Attorney
1620 Dodge Street, Ste. 1400
Omaha, Nebraska 68102
Tel: (402) 661-3700
Fax: (402) 661-3084
E-mail: sean.lynch@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all registered participants. I also hereby certify that a copy of the same was served by regular mail, postage prepaid, to the following non-CM/ECF participants:

Nicholas Andrew Travis
#31635-047
FCI Terre Haute
PO Box 33
Terre Haute, IN 47808

s/ Sean P. Lynch
Assistant U.S. Attorney