IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                  Plaintiff,<br><br>vs.<br><br>NICHOLAS ANDREW TRAVIS,<br><br>                  Defendant. | **8:20-CR-80**<br><br>**MEMORANDUM AND ORDER ON MOTION FOR COMPASSIONATE RELEASE** |

## I.    INTRODUCTION

This matter is before the Court on defendant Nicholas Andrew Travis's Motions for Compassionate Release. Filing 63; Filing 66. In support of his Motions, Travis claims that he has experienced mistreatment from prison staff at his carceral facility, has not had his medical ailments properly addressed, and has been subjected to other unpleasant conditions while serving his term of incarceration. Filing 63 at 1–6; Filing 63 at 5. The Government opposes the Motion. Filing 69. For the reasons stated herein, the Court denies the Motion.

## II.    BACKGROUND

On February 19, 2020, a grand jury issued a two-count indictment charging Travis with (1) receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2), (b)(1); and (2) possession of child pornography, including images depicting a prepubescent minor and a minor under the age of 12, in violation of 18 U.S.C. § 2252(a)(4)(B), (b)(2). Filing 1 at 1–2. As outlined in the Revised Presentence Investigation Report, Google reported to the National Center for Missing and Exploited Children that a Google user with the email address NickTravis74@gmail.com uploaded numerous images of child pornography to a Google Drive account. Filing 56 at 5. One of the images depicted a female infant and another depicted a prepubescent female. Filing 56 at 5.

1

Investigators identified the Google user as Travis. Filing 56 at 5. A search of Travis's Google account contained numerous images of child pornography as well as messages asking individuals to send images of children, inquiring about having sex with an infant, expressing willingness to pay for sex with a child, and sharing child pornography with other individuals. Filing 56 at 5.

Law enforcement executed a search warrant at Travis's residence on January 24, 2020. Filing 56 at 6. During an interview with law enforcement, Travis admitted to having child pornography on his cell phone and chatting with others about having sex with children, although he insisted he would not have followed through with these fantasies. Filing 56 at 6. A review of materials seized during the search identified a total of 2,262 photos and 934 videos of child pornography. Filing 56 at 6.

Travis pleaded guilty to Count I of the Indictment—receipt of child pornography—and was sentenced on April 21, 2021, to 151 months of incarceration, the lowest end of his guidelines. Filing 27 (Text Minute Entry); Filing 60. On March 10, 2023, Travis filed his first Motion for Compassionate Release. Filing 63. Travis filed an addendum to the Motion and a Motion to Appoint counsel on March 17, 2023. Filing 64. Seven days later, Travis filed a second Motion for Compassionate Release that makes further, albeit vague, allegations. Filing 66.

Travis's First Motion for Compassionate Release outlines an incident of alleged misconduct by a prison staffer on February 8, 2023, in which a prison staffer informed Travis's fellow inmates of Travis's child pornography conviction. Filing 63 at 1. According to Travis, he has been subjected to name-calling and threats as a result. Filing 63 at 1. Travis also claims that the prison is refusing treat his scoliosis or provide him with medicine for his mental health ailments. Filing 63 at 2, 5. He further asserts various issues with the conditions of his confinement, including that in late February and early March of 2023 he resided in two cells with no heat; that

there are cockroaches where the prison stores food; that he must climb up to the top bunk in his cell despite his scoliosis; and that he is emaciated from lack of food. Filing 63 at 3–6.

Travis's second Motion for Compassionate release includes similar allegations, though with less detail. In this Motion, Travis states that the "primary basis" for his request is the "excessive and wide-spread [sic] staff misconduct, abuse, targeting, willful endangerment, 8th Amendment violations, abuse of power, terroristic threats, obstruction, medical negligence, medical malpractice, and falsifying documents . . . ." Filing 66 at 5. Travis does not expand on these claims beyond asserting that the prison medical files in his possession are incomplete. Filing 66 at 5.

Over a hundred pages of Travis's medical records accompany his second Motion. The records document Travis's history of psychological issues, such as borderline personality disorder and depression, sleep problems, and back pain. *See generally* Filing 66-1. According to these records, Travis has engaged in a hunger strike, had violent episodes of self-harm—including banging his head repeatedly—and attempted to overdose on Tylenol. Filing 66-1 at 34–110. Travis scribbled comments on these records outlining his disagreements with his treatment. *See, e.g.,* Filing 66-1 at 44–45.

### III.    ANALYSIS

#### A.  Exhaustion of Administrative Remedies

In Section 603 of the First Step Act, Congress amended 18 U.S.C. § 3582(c)(1)(A) to empower courts to reduce a prisoner's term of imprisonment upon a prisoner's motion. *See* 18 U.S.C. § 3582(c)(1). The amendment provides for "so-called 'compassionate release.'" *See United States v. Avalos Banderas*, 39 F.4th 1059, 1061 (8th Cir. 2022).

Under the plain terms of the statute, prisoners may move to reduce their terms of imprisonment on their own after exhausting their administrative remedies. "Exhaustion occurs at the earlier of either (1) when the prisoner has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion' on his behalf or (2) 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner's] facility.'" *United States v. Houck*, 2 F.4th 1082, 1083–84 (8th Cir. 2021) (alteration in original) (citing 18 U.S.C. § 3582(c)(1)(A)). Exhausting administrative remedies "is a mandatory claim-processing rule." *Id.* The Court must dismiss a compassionate-release motion without prejudice when the Government properly and correctly raises the prisoner's failure to exhaust. *See Houck*, 2 F.4th at 1084 (holding that a mandatory claim-processing rule "must be enforced so long as the opposing party properly raises it").

Here, the Government argues that Travis has failed to exhaust his administrative remedies. Filing 69 at 3–4. Travis's addendum to his first Motion for Compassionate Release references a request he sent to his facility's warden in late December of 2022, but does not state what he included in this request. Filing 64 at 1. In his second Motion, which utilized a standard compassionate release form, Travis checked a box stating that he had submitted a request for compassionate release to his facility's warden and wrote that he submitted the request in December of 2022. Filing 66 at 3. He did not, however, include the written request despite the form prompting him to do so. Filing 66 at 2. The Government seizes upon Travis's lack of proof and points out that, even if Travis did send a request to his facility's warden in December of 2022, many of allegations of misconduct Travis makes in his first Motion post-date this request. Filing 69 at 4.

Travis's omission of what he submitted to his warden, if anything, presents a potential impediment to the Court's analysis. The reasons for compassionate release that Travis submitted

to his warden dictate the scope of exhaustion and, therefore, this Court's review. As the Seventh Circuit Court of Appeals has persuasively held, "[A]n inmate is required to present the same or similar ground for compassionate release in a request to the Bureau as in a motion to the court." *United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021). If the prisoner does not include a reason for release in his request to the BOP, the BOP "cannot determine whether it could bring a compassionate-release motion" on the prisoner's behalf. *Id.* Thus, if Travis includes grounds in his Motions that he did not present first to the BOP, he has failed to exhaust his remedies as to those grounds.

The Eighth Circuit Court of Appeals has not yet ruled on whether the exhaustion issue falls on the prisoner's or the government's shoulders.[1] It is unnecessary for the Court to decide the issue, however, because for two asserted grounds Travis has clearly not exhausted his administrative remedies, while the other grounds fail on the merits. Travis claims that he submitted his compassionate-release request to the warden in late December of 2022. Filing 64 at 1; Filing 66 at 3. As the Government correctly points out, the prison staff member telling inmates about Travis's child-pornography offense—leading to various name-calling and threats—and Travis being kept in cold cells occurred after he submitted this request. Filing 63 at 1, 3. Travis must bring these issues to the BOP first. *See Houck*, 2 F.4th at 1083; *Williams*, 987 F.3d at 703. The Court will proceed to the remaining grounds and deny them on the merits.

## B. Extraordinary and Compelling Reasons for Release and the 18 U.S.C. § 3553(a) Factors

Turning to the issues that the Government has not shown Travis failed to exhaust, the Court concludes that Travis has failed to establish extraordinary and compelling reasons warranting

---

[1] The Seventh Circuit Court of Appeals has held that the exhaustion requirement for compassionate release is an affirmative defense. *See United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020).

release. Section 603 of the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018), amended 18 U.S.C. § 3582(c)(1)(A) and provides in pertinent part:

> [T]he court . . . may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). It is the prisoner's burden to establish an entitlement to a sentence reduction. *See Avalos Banderas*, 39 F.4th at 1062. "[T]he district court is not required to investigate possible avenues for relief or to develop the record in support of a motion." *Id.* Nor must a district court "make a specific rejoinder to every circumstance cited in support of a reduction." *United States v. Loggins*, 966 F.3d 891, 893 (8th Cir. 2020). Furthermore, because district courts have "broad discretion" when considering whether the 18 U.S.C. § 3553(a) sentencing factors warrant early release, a district court does not abuse its discretion simply because "other district courts may have granted compassionate release for defendants with similar backgrounds." *United States v. Marcussen*, 15 F.4th 855, 859 (8th Cir. 2021). Finally, the Eighth Circuit Court of Appeals has cautioned that "[t]he compassionate release statute is not a freewheeling opportunity for resentencing based on prospective changes in sentencing policy or philosophy." *United States v. Crandall*, 25 F.4th 582, 586 (8th Cir. 2022). With these considerations in mind, the Court turns to the merits of Travis's Motions.

Travis's asserted reasons for release involve his conditions of confinement. He claims that his mental health ailments are not being properly treated; that he must climb to the top bunk in his cell despite having scoliosis; that he is emaciated; that there are cockroaches where the prison

stores food; and that prison officials have falsified documents. Filing 63; Filing 66. He also makes other generalized allegations of misconduct, primarily in his second Motion.

The Court finds several problems with Travis's asserted grounds for relief. First, having reviewed the medical records, the Court concludes that Travis's emaciation is self-inflicted. As his medical records demonstrate, Travis has voluntary conducted hunger strikes while incarcerated. *See, e.g.*, Filing 66-1 at 34, 54. These records also show that doctors have been prescribing Travis medicine for his mental health ailments and frequently had appointments with Travis to discuss his medical issues. *See, e.g.*, Filing 66-1 at 20. Travis's assertion that he has been denied medicine is baseless; rather, it appears Travis is unhappy with the type of medication his doctors have prescribed. Travis's disagreement with his medical treatment is not a basis for relea*se. Cf. Bender v. Regi*er, 385 F.3d 1133, 1137 (8th Cir. 200*4*) ("[A]n inmate's 'mere disagreement with the course of his medical treatment' fails to state a claim of deliberate indifference." (quoting *Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir. 1990))).

Second, many of Travis's allegations lack any detail. This defect is primarily present in his second Motion, which lists several conclusory claims about mistreatment without further factual enhancement. According to Travis, the "primary basis" for compassionate release in his second Motion is "excessive and wide-spread [sic] staff misconduct, abuse, targeting, willful endangerment, 8th Amendment violations, abuse of power, terroristic threats, obstruction, medical negligence, and medical malpractice." Filing 66 at 5. No elaboration follows. Put simply, a prisoner cannot establish extraordinary and compelling reasons for release by listing unspecific and vague allegations and leaving it to the court to figure things out. It is Travis's burden to put

forward extraordinary and compelling reasons for release. *See Avalos Banderas*, 39 F.4th at 1062.

The Court is not obligated to develop Travis's reasons for him.[2] *See id.*

Third, as the Government highlights in its Brief, several of the problems Travis has may

soon be alleviated because, as Travis states in his filings, he will be transferred soon. Filing 66 at

14; Filing 68 at 2. Several of Travis's reasons for release relate to his current place of incarceration,

such as his bunk bed arrangement and cockroaches in the food storage room. Because transferring

prisons may resolve some of Travis's problems with his confinement, they do not constitute

extraordinary and compelling reasons for release.

Finally, and more fundamentally, the Court doubts that the conditions of confinement

issues Travis outlines in his Motions are proper bases for modifying a sentence under 18 U.S.C. §

3582(c)(1)(A). Although the statute's permissive language invites courts to consider a range of

situations warranting release,[3] as a general matter extraordinary and compelling reasons for release

exist in three scenarios: (1) severe physical or medical conditions that poses substantial difficulties

in providing self-care; (2) old age combined with serious physical or mental deterioration; and (3)

severe hardship on vulnerable family members. *See* U.S.S.G. 1B1.13 cmt. 1; *United States v.*

*Brown*, 411 F. Supp. 3d 446, 452 (S.D. Iowa 2019) (noting the "three categories that form the

heartland of compassionate release cases," which are terminal illness, old age, and children lacking

a caregiver). In these situations, release from prison is the only mechanism available to remedy

the prisoner's issues. But Travis has alternative paths open to him to challenge his medical

treatment and other conditions of his confinement beyond a release from prison. He could file a

---

[2] In his first Motion, Travis requests a hearing. 18 U.S.C. § 3582(c)(1)(A) does not require a hearing for motions for compassionate release. *See Vangh*, 990 F.3d 1138, 1140 (8th Cir. 2021). The Court declines to hold a hearing on Travis's Motions.
[3] For example, some courts have used sentencing disparities from changes in the law as a basis to modify sentences. *See United States v. Condon*, 458 F.Supp.3d 1114, 1120 (D.N.D. 2020) (making the same observation).

failure-to-provide-medical-care claim—one of the few causes of action still encompassed by *Bivens*[4]—or a claim under the Federal Torts Claim Act against the prison officials supposedly committing misconduct. When prisoners have options available to address the issues they have with their conditions of confinement, those issues are not compelling reasons for release. It would impermissibly broaden the scope of 18 U.S.C. § 3582(c)(1)(A) to release Travis when he has other solutions at hand. *Cf. Egbert v. Boule*, 142 S. Ct. 1793, 1806 (2022) (noting that alternative remedies was a reason not to create an implied cause of action under *Bivens*).

In sum, the Court concludes that Travis has not presented extraordinary and compelling reasons for release. His emaciation is a result of a self-imposed hunger strike. Physicians are providing treatment for Travis's medical ailments, and his disagreement with his treatment regimen is not a ground for release. Allegations of cockroaches in a food storage room and using a top bunk despite having scoliosis are unpleasant, but they are not extraordinary and compelling reasons for release. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991) ("The Constitution . . . 'does not mandate comfortable prisons[.]'" (quoting *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981))). Travis's other allegations of staff misconduct and falsifying documents are vague and unsubstantiated. Travis fails to meet his burden on his compassionate-release Motions.

The Court has also reviewed the record and whether Travis's release would be contrary to the factors outlined in 18 U.S.C. § 3553(a).[5] On this point the Court need not say much. The nature, circumstances, and severity of Travis's crime speak for themselves. Travis had a substantial amount of child pornography on his devices. He contacted others about having sex with an infant

---

[4] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).
[5] These factors include the "nature and circumstances of the offense," "history and characteristics of the defendant," "need to avoid unwarranted sentence disparities among defendant with similar records who have been found guilty of similar conduct," and the need for the sentence imposed to "reflect the seriousness of the offense," "promote respect for the law," "provide just punishment for the offense," "afford adequate deterrence," and "protect the public." 18 U.S.C. § 3553(a)(1), (2)(A)–(C), (6).

and expressed willingness to pay for sex with a child. Despite these circumstances, the Court gave some leniency to him by sentencing him to the lowest end of his guideline range. Further, a review of the medical records Travis filed in this case show that Travis has had violent episodes in prison and unresolved mental health issues. Release at this point would not promote the important interest of protecting society. Finally, Travis has not even served half of his sentence—his potential release date is February 25, 2031, Filing 66-1 at 7—so his release would create unwarranted sentencing disparities. Thus, Travis's release would be contrary to the § 3553(a) factors. Indeed, even assuming Travis had exhausted his administrative remedies for every ground in his Motions and properly presented reasons for release, the Court would find that the § 3553(a) factors would not support release. The Court denies Travis's Motion.[6]

## IV.    CONCLUSION

For these reasons, the Court concludes that Travis has not exhausted his administrative remedies as to some of his asserted grounds for compassionate release; that he has not presented extraordinary and compelling reasons for release; and that, no matter what, release at this point would be contrary to the factors under 18 U.S.C. § 3553(a). Accordingly,

IT IS ORDERED:

1.   Travis's first Motion for Compassionate Release, Filing 63, is denied;

2.   Travis's second Motion for Compassionate Release, Filing 66, is denied; and

---

[6] Given that the Court denies compassionate release, Travis's request for the Court to appoint him counsel, Filing 64, is denied as moot.

3.   Travis's Motion to Appoint Counsel, Filing 64, is denied as moot.

Dated this 14th day of April, 2023.

BY THE COURT:

Brian C. Buescher
United States District Judge